**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

PAUL LUKA,

         Plaintiff,

    v.

THE PROCTER AND GAMBLE COMPANY,

         Defendant.

Civil Action No. 1:10-cv-02511

JURY TRIAL DEMANDED

**DEFENDANT PROCTER AND GAMBLE COMPANY'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO
<u>DISMISS PLAINTIFF'S COMPLAINT</u>**

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................1

II.  STATEMENT OF ISSUES TO BE DECIDED ..................................................2

III. STATEMENT OF RELEVANT FACTS .............................................................2

  A.  The law of patent marking .......................................................................2

  B.  Plaintiff's allegations against P&G .........................................................3

IV.  ARGUMENT .........................................................................................................4

  A.  P&G has not committed any acts of false marking because it sold the Sure
      Max line of products to another company several years ago ..................4

  B.  Plaintiff's Complaint is insufficient to state a claim under Rule 9(b) ...4

    1.  Allegations of false marking are subject to the heightened pleading
        requirement of Rule 9(b)...............................................................4

    2.  The Complaint fails to allege sufficient facts to meet the
        heightened pleading requirement of Rule 9(b) .............................9

    3.  The Complaint fails to allege sufficient facts to meet the of basic
        pleading requirement of Rule 8(a) ..............................................10

  C.  Section 292 violates the "Take Care" clause of Article II because it gives a
      private party the powers of the Executive Branch without sufficient
      control by the Executive Branch.............................................................11

V.   CONCLUSION....................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Adv. Cartridge Tech. v. Lexmark*, No. 10-486 (M.D. Fla. June 30, 2010) ..................................8

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ..............................................................................10

*Brinkmeier v. Graco Children's Products Inc.*, No. 09-0262, 2010 WL 545896
(D. Del. Feb. 16, 2010) ...............................................................................................7, 10

*Buckley v. Valeo*, 424 U.S. 1 (1976) ......................................................................................11

*Cent. Admixture Pharm. Services, Inc. v. Advanced Cardiac Solutions, P.C.*,
No. 00-2430, 2006 WL 4448613 (N.D. Ala. Jan. 13, 2006)........................................6

*Cent. Admixture Pharmacy Services, Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d
1347 (Fed. Cir. 2007)..............................................................................................6, 9

*City of Santa Clara v. Astra United States, Inc.*, 428 F. Supp. 2d 1029 (N.D. Cal. 2006)...........10

*Clinton v. Jones*, 520 U.S. 681 (1997)...................................................................................11

*Exergen Corp. v. Wal-Mart Stores Inc.*, 575 F.3d 1312 (Fed. Cir. 2009) ................................9, 10

*Federal Election Comm'n v. Akins*, 524 U.S. 11 (1998) ............................................................13

*Ferguson Beauregard/Logic Controls, Inc. v. Mega Sys.*, 350 F.3d 1327
(Fed. Cir. 2003)..........................................................................................................9

*Forest Group Inc. v. Bon Tool Co.*, 590 F.3d 1295 (Fed. Cir. 2009) .............................................4

*Friends of the Earth*, 528 U.S. at 197 ...................................................................................13

*Heathcote Holdings Corp., Inc. v. Revlon Inc.*, No. 10-1936 (N.D. Ill. Sept. 1, 2010)..................5

*Hershey v. Energy Transfer Partners, L.P.*, No. 09-20651, 2010 WL 2510122
(5th Cir. June 23, 2010) (granting Rule 12(b)(6) motion to dismiss)....................................10

*Hollander v. Etymotic Research*, No. 10-526, 2010 WL 2813015 (E.D. Pa. July 14, 2010) .........8

*Inventorprise, Inc. v. Target Corp.*, No. 09-380, 2009 WL 3644076
(N.D.N.Y. Nov. 2, 2009) ............................................................................................6, 7

*King Auto., Inc. v. Speedy Muffler King, Inc.*, 667 F.2d 1008
(Cust. & Pat. App. 1981) .............................................................................................10

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006) ................................................9

*Lujan*, 504 U.S. at 577 ................................................................................................13

*Luka v. Revlon*, No. 10-2509 (N.D. Ill. Sept. 1, 2010) ..................................................5

*Max Impact, LLC v. Sherwood Group, Inc.*, No. 09-902, 2009 WL 2448108
    (S.D.N.Y. Aug. 10, 2009) ........................................................................................8

*McNamara v. Nat'l Organics*, No. 10-3544 (N.D. Ill Sept. 1, 2010) ..............................8

*Meyers v. United States*, 272 U.S. 52 (1926)..............................................................11

*Morrison v. Olsen*, 487 U.S. 654 (1988)......................................................................12

*N. Pipeline Constr. Co. v. Marathon Pipeline Constr. Co.*,
    458 U.S. 50 (1982)................................................................................................11

*Pequignot v. Solo Cup Co.*, 608 F.3d 1356 (Fed. Cir. June 10, 2010)............................6

*Printz v. United States*, 521 U.S. 898 (1997)...............................................................12

*Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749 (5th Cir. 2001) ........................12, 14

*Romani v. Shearson Lehman Hutton*, 929 F.2d 875 (1st Cir. 1991)..............................10

*Shizzle Pop, LLC v. Aviva Sports, Inc.*, No. 10-2574 (C.D. Cal. filed Aug. 5, 2010) ...................7

*Shizzle Pop, LLC v. Wham-O, Inc.*, No. 10-3491 (C.D. Cal. filed August 2, 2010).......................7

*Simonian v. Cisco Sys., Inc.*, No. 10-01306................................................................8

*Stauffer v. Brooks Bros.*, 615 F. Supp. 2d 248 (S.D.N.Y. 2009) ....................................5

*Stauffer v. Brooks Bros*, _ F.3d _ (Fed. Cir. Aug. 31, 2010) ........................................5

*United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743 (1993)..................................12, 14

*United States ex rel. Stone v. Rockwell Int'l Corp.*, 265 F.3d 1157 (10th Cir. 2001)....................14

*United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787 (10th Cir. 2002).....................12

*United States ex rel. Taxpayers Against Fraud v. General Elec. Co.*, 41 F.3d 1032 (6th
    Cir. 1994) ......................................................................................................12, 14

*United States v. Nixon*, 418 U.S. 683 (1974) ........................................................................12, 14

*Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765
 (2000) ..........................................................................................................................................13

## STATUTES

31 U.S.C. §§ 3729-3733 ........................................................................................................14

35 U.S.C. § 112 ..........................................................................................................................3

35 U.S.C. § 287 ..........................................................................................................................2

Fed. R. Civ. P. 9(b) ...........................................................................................................1, 2, 4, 5

Fed. R. Civ. P. 12(b)(6)......................................................................................................1, 2, 5

35 U.S.C. § 292 ................................................................................................................1, 2, 3, 6

## I.    INTRODUCTION

Plaintiff Paul Luka's Complaint alleges that The Procter and Gamble Company ("P&G") violated the false patent marking statute, 35 U.S.C. § 292, by not removing patent numbers from packaging on P&G's products after expiration of the patents.  However, his Complaint has three fundamental flaws requiring dismissal: (1) it erroneously accuses P&G of false marking because P&G has not manufactured, marked, or sold the Sure Max line of products at anytime after the patents expired; (2) it does not meet the minimum pleading requirements for a case alleging fraud; and (3) it relies on a statute, 35 U.S.C. § 292, which violates the "Take Care" clause of Article II of the U.S. Constitution.

As to the first basis for dismissal, P&G did not manufacture the Sure Max line of products.  P&G sold the Sure line of products to another company in 2006, years before the patents expired in 2008 and 2009.  Further, P&G never designed the packaging, or had any control over the marketing or sale of the Sure Max line of products.  P&G did not commit any act of false marking, let alone intend to deceive the public; therefore, this Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim against P&G.

As to the second basis for dismissal, Section 292 requires that any actionable false marking be done "for the purpose of deceiving the public."  Accordingly, false marking allegations must satisfy the heightened pleading requirements for fraud under Fed. R. Civ. P. 9(b).  However, this Complaint lacks the specificity required by Rule 9(b) with respect to P&G's allegedly fraudulent intent.  It contains only a conclusory assertion unsupported by any facts.  For this reason, the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

As to the third basis for dismissal, on Constitutional grounds, the false marking statute allows any person – a *qui tam* relator – to sue on the government's behalf without any "sufficient control" over the *qui tam* relator or the litigation as a whole.  This lack of control violates the

"Take Care" clause of Article II because Congress impermissibly stripped the Executive Branch of its power to enforce the laws. For this reason as well, the Complaint should be dismissed.

## II. STATEMENT OF ISSUES TO BE DECIDED

1.   Whether the Complaint erroneously accuses P&G of false marking because P&G has not marked or sold the Sure Max line of products with expired patent numbers?

2.   Whether the Complaint fails to state a claim upon which relief can be granted because it only contains a conclusory allegation that P&G acted with the purpose of deceiving the public, which does not satisfy the standard set forth in Fed. R. Civ. P. 9(b)?

3.   Whether 35 U.S.C. § 292 violates the "Take Care" clause of Article II of the United States Constitution?

## III. STATEMENT OF RELEVANT FACTS

### A.    The law of patent marking

In a patent infringement suit, the patent holder may collect damages only from the time an infringer has notice of the patentee's patent. 35 U.S.C. § 287. One means by which patent holders may give notice of their patents is by marking the product with applicable patent numbers. *Id*. If the patentee marks its product with a patent number, then damages can be recovered under that patent for all infringing activity within the limitations period, regardless of the infringer's actual notice of the patent. *Id*. Patentees therefore have a strong incentive to mark their products with their patent numbers to ensure recovery of all damages caused by infringement within the six-year limitations period.

The patent laws' encouragement of patent marking furthers the goal of active competition. A patent must disclose how to make and use the patented invention and set forth the best way to implement the invention. 35 U.S.C. § 112. Accordingly, by marking a patented product with the patent number, the patentee is advertising to the world where to find the instruction manual – the patent – for that product. Once a competitor obtains the patent, it can engage in encouraged activities such as designing around the patent, improving on the invention

disclosed in the patent, or copying the patent after it has expired. This furthers the patent law's foundational principle of *quid pro quo*, wherein a patentee obtains a limited right to exclude others from making her invention in exchange for disclosing that invention to the public.

As a counterpart to the patent marking provision of Section 287, the false marking provision of the Patent Act, 35 U.S.C. § 292, prohibits: (1) marking a product with a patent number without the consent of the patentee; (2) marking an unpatented article with a patent number; or (3) marking an article with a false statement that a patent application is pending. In the "typical" false marking claim, the plaintiff will accuse a competitor of marking its product with a patent number, where the indicated patent does not cover the product. In addition to this traditional use of the false marking statute, a new cottage industry has recently sprung up wherein a private citizen with no connection to the industry or product at issue files suit against a large corporation alleging a violation of Section 292 simply because the corporation, upon expiration of a patent, has not removed the patent number from a product covered by the patent.

### B.  Plaintiff's allegations against P&G

This is not the typical type of false marking case. Plaintiff is not a competitor of P&G. It does not sell products or otherwise compete with P&G. Plaintiff does not even allege that it is a consumer of the products at issue. He does not claim to have been harmed by the alleged false marking. Plaintiff does not allege that the patents do not cover the product. Instead, Plaintiff only asserts that the Sure Max product was falsely marked with two expired U.S. Patents: 5,000,356 and 5,156,834. Based on this allegation, Plaintiff seeks a monetary windfall under the theory that each product marked with an expired patent number could carry a fine of up to $500 payable to the first plaintiff to file suit. *See, e.g.*, *Forest Group Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1303 (Fed. Cir. 2009).

In addition, Plaintiff's allegations regarding P&G's intent to deceive the public (a required element of false marking) are entirely conclusory:

Upon information and belief, the Defendant marks its Sure Max product and packaging materials with the expired '356 Patent and '834 Patent numbers with the intent to deceive the public and to gain a competitive advantage in the market.

(Compl. ¶ 6); (*see also* Compl. ¶¶ 24, 25, 47 and 48.)

Plaintiff cites no factual details to support its allegations. Consequently, the only allegation supporting intent is the conclusory assertion by Plaintiff that various products were marked with various expired patent numbers.

## IV.  ARGUMENT

### A.  P&G has not committed any acts of false marking because it sold the Sure Max line of products to another company several years ago

P&G has not marked or sold any Sure Max product after the patents expired; therefore, P&G did not commit any act of false marking, and this Complaint should be dismissed. P&G sold the Sure brand and provided a license to the 5,000,356 and 5,156,834 patents to a third party, Innovative Brands, LLC, in 2006. (Hogan Charles Decl. ¶ 2) (attached). These patents then expired several years later in 2008 and 2009, respectively. After the expiration of these patents, P&G did not manufacture any Sure Max product, design the Sure Max packaging, or mark any Sure Max product with an expired patent number. (*Id*. ¶ 4). Further, after the expiration of the patents, P&G did not have any control over the marketing and advertizing of the Sure Max line of products, or sell any Sure Max products. (*Id*. ¶ 3). Therefore, for each of these reasons, P&G did not commit any act that could be alleged to be false marking, and it certainly did not act with any intent to deceive the public. *See* 35 U.S.C. § 292. P&G should be dismissed from this action under Fed. R. Civ. P. 12(b)(6) because the Complaint fails to state a claim against P&G.

### B.  Plaintiff's Complaint is insufficient to state a claim under Rule 9(b)

#### 1.  Allegations of false marking are subject to the heightened pleading requirement of Rule 9(b)

If this case is allowed to proceed against P&G, the Complaint should be dismissed because it fails to plead sufficient facts to satisfy the heighted pleading requirement of Fed. R.

Civ. P. 9(b), which requires an allegation of fraud to be pled with specificity.  In *Stauffer*, after finding that *qui tam* plaintiffs have standing to bring a false marking suit on behalf of the United States, the Federal Circuit remanded the case with these specific instructions:

> We remand for the court to address the merits of the case, including Brooks Brothers' motion to dismiss pursuant to Rule 12(b)(6) "on the grounds that the complaint fails to state a plausible claim to relief because it fails to allege an 'intent to deceive' the public – a critical element of a section 292 claim – with sufficient specificity to meet the heightened pleading requirements for claims of fraud imposed by" Rule 9(b).

*Stauffer v. Brooks Bros.*, _ F.3d _, _, 2009-1428, -1430, -1453, slip op. at 14 (Fed. Cir. Aug. 31, 2010) (quoting *Stauffer v. Brooks Bros.*, 615 F. Supp. 2d 248, 251 n.1. (S.D.N.Y. 2009)).  Here, the Plaintiff's Complaint only includes vague allegations of intent to deceive the public; therefore, this case should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for a failure to satisfy the pleading requirements of Fed. R. Civ. P. 9(b).

Your Honor has previously, briefly addressed, and denied two motions to dismiss under Fed. R. Civ. P. 9(b) in the false marking context.[1]  Defendant respectfully asks this Court to reconsider this issue in view of the Federal Circuit's instructions on remand in *Stauffer*.  A full analysis of the *Stauffer* opinion clarifies that the Federal Circuit remanded to the district court on the issue of analyzing a complaint under the heightened pleading requirements Fed. R. Civ. P. 9(b).  Your Honor should join the majority of other district courts on this issue, and the multitude of other Judges in this district, including Judges Shadur, Bucklo, and Der-Yeghiayan, who have found not only that Fed. R. Civ. P. 9(b) applies to an allegation of false marking, but also that vague and conclusory pleadings – like those in this case – do not meet the heightened pleading standard of Rule 9(b).

The Federal Circuit has recently clarified that an allegation of false marking does not violate Section 292 unless done "for the purpose of deceiving the public." 35 U.S.C. § 292;

---

[1]  *Heathcote Holdings Corp., Inc. v. Revlon Inc.*, No. 10-1936 (N.D. Ill. Sept. 1, 2010) (attached as Ex. 1) and *Luka v. Revlon*, No. 10-2509 (N.D. Ill. Sept. 1, 2010) (attached as Ex. 2).

*Pequignot v. Solo Cup Co.*, 608 F. 3d 1356, 1363 (Fed. Cir. June 10, 2010) ("Because the statute requires that the false marker act 'for the purpose of deceiving the public,' a purpose of deceit, rather than simply knowledge that a statement is false, is required."). Based on this requirement, the Federal Circuit remanded to the district court on the issue of analyzing a complaint under the heightened pleading requirements of Rule 9(b). *Stauffer*, 2009-1428, slip op. at 14 (quoted above). Even before the Federal Circuit concluded that Rule 9(b) was applicable to an allegation of false marking,[2] several district courts have dismissed complaints based on a failure to satisfy the heightened pleading requirement of Rule 9(b). While each case is unique, these complaints each suffered the same deficiency as the Plaintiff's Complaint in this suit – the allegation of intent to deceive the public was unsupported and speculative.

Courts have dismissed similar false marking complaints for failure to sufficiently plead the intent element where insufficient facts were alleged to support the conclusory allegation of intent. For example, in *Inventorprise, Inc. v. Target Corp.*, No. 09-380, 2009 WL 3644076, at *6 (N.D.N.Y. Nov. 2, 2009), the court dismissed a complaint alleging that defendant's status as a "sophisticated" company with experience in intellectual property matters imputed it with knowledge that the marked patent numbers did not cover the product. The court held that these allegations were insufficient to plead the element of "intent to deceive the public," and dismissed the case. *Id.* at *6 ("Plaintiff ... allege[d], in conclusory fashion, that [defendant] could not have reasonably believed that the Product was patented.").

---

[2]    Before the development of the expired false marking cottage industry, the Federal Circuit affirmed a decision that an allegation of traditional false marking required the claimant to satisfy the heighted pleading requirement of Rule 9(b). *See Cent. Admixture Pharm. Servs., Inc. v. Advanced Cardiac Solutions, P.C.*, No. 00-2430, 2006 WL 4448613, at *24 (N.D. Ala. Jan. 13, 2006) ("Both the language of Section 292 and the binding authority in this Circuit place on the [plaintiffs] the burden to plead and produce facts demonstrating that the [defendants], in marking the solution with the [] patent, had the specific intent to deceive the public into believing something that [they] knew to be false."), *aff'd* in relevant part by 482 F.3d 1347 (Fed. Cir. 2007).

In *Brinkmeier v. Graco Children's Products Inc.*, No. 09-0262, 2010 WL 545896, at *5 (D. Del. Feb. 16, 2010), likewise, the complaint conclusorily alleged that "Defendant cannot have any reasonable belief that such products are protected by such [expired] patents," and that defendant acted "for the purpose of deceiving the public." The court found that "these allegations are conclusory and do not contain enough factual matter to suggest that Defendant acted with requisite intent to deceive," and dismissed them. *Id.*; *see also Brinkmeier v. BIC*, No. 10-00001 (D. Del. Aug. 25, 2010) (dismissing the same *qui tam* plaintiff based on similar allegations of intent to deceive the public).[3]

In *Shizzle Pop, LLC v. Wham-O, Inc.*, No. 10-3491, at 4 (C.D. Cal. filed August 2, 2010),[4] the complaint alleged "upon information and belief" that defendant had knowledge that its products were not patented. The only fact which plaintiff pointed to as a basis for its allegation was that the product packaging was marked with a copyright dated 2009. *Id.* The court dismissed the plaintiff's complaint for lack of particularity in pleading (without prejudice), applying the Rule 9(b) standard, and found that further factual detail was needed in order to survive a motion to dismiss. *Id.* at 4-5. The court held that creating new packaging does not create a reasonable inference that the defendant knew the patent had expired. *Id.* Similarly, Shizzle Pop's complaint was also dismissed in *Shizzle Pop, LLC v. Aviva Sports, Inc.*, No. 10-2574, order at 2 (C.D. Cal. filed Aug. 5, 2010)[5], because the court found that its allegation "constitutes merely a recitation of the elements" and failed to meet the Rule 8 or Rule 9(b) standards for pleading.

Further, in *Simonian v. Cisco Sys., Inc.*, No. 10-01306, mem. op. at 9-10 (N.D. Ill. filed June 17, 2010) the court held that the complaint did not meet the heightened pleading

---

[3]  A copy of *Brinkmeier v. BIC*, is attached as Ex. 3.

[4]  A copy of *Shizzle Pop, LLC v. Wham-O, Inc.*, is attached as Ex. 4.

[5]  A copy of *Shizzle Pop, LLC v. Aviva Sports, Inc.*, is attached as Ex. 5.

requirements of Rule 9(b) because ". . . the mere fact of mismarking a product does not necessarily show knowledge or intent. Thus, [plaintiff] cannot proceed with his claim absent any specific factual allegations indicating that [defendant] had knowledge of the mismarking or an intent to deceive the public.";[6] *see also McNamara v. Nat'l Organics*, No. 10-3544 (N.D. Ill Sept. 1, 2010) (same).[7]

Finally, district courts in Florida, New York, and Pennsylvania have also dismissed cases based on a failure to satisfy the pleading requirements of Rule 9(b). *See Adv. Cartridge Tech. v. Lexmark*, No. 10-486 (M.D. Fla. June 30, 2010) (complaint failed to meet Rule 9(b));[8] *Herengracht v. W.M. Wrigley Jr. Co.*, No. 10-21784, at *11 (S.D. Fla. September 16, 2010) ("Given the conclusory nature of the allegations, there is insufficient factual matter alleged to adequately set forth the second element of the false marking claim.");[9] *see also Max Impact, LLC v. Sherwood Group, Inc.*, No. 09-902, 2009 WL 2448108, at *1 (S.D.N.Y. Aug. 10, 2009) (refusing to permit plaintiff to add claim for false marking based on the claim's futility, where there were only conclusory allegations to support an intent to deceive);[10] *Hollander v. Etymotic Research*, No. 10-526, 2010 WL 2813015, *7 (E.D. Pa. July 14, 2010) (holding dismissal was warranted on the grounds that plaintiff had not adequately alleged intent to deceive under Rule 9(b) because "[d]efendant's knowledge of the limited duration of patents and the actual expiration of the patents do not create an inference that defendant knew that the patents at issue actually expired.").[11]

---

[6]   A copy of *Simonian v. Cisco Sys., Inc*, is attached as Ex. 6.

[7]   A copy of *McNamara v. National Organics*, is attached as Ex. 7.

[8]   A copy of *Adv. Cartridge Tech. v. Lexmark*, is attached as Ex. 8.

[9]   A copy of *Herengracht v. W.M. Wrigley Jr. Co.*, is attached as Ex. 11.

[10]  A copy of *Max Impact, LLC v. Sherwood Group, Inc.*, is attached as Ex. 9.

[11]  A copy of *Hollander v. Etymotic Research* is attached as Ex. 10.

The Federal Circuit has addressed Rule 9(b)'s pleading requirements in the analogous context of inequitable conduct in patent cases. *Exergen Corp. v. Wal-Mart Stores Inc.*, 575 F.3d 1312 (Fed. Cir. 2009).[12]  The court held Rule 9(b) requires identification of the "specific who, what, when, where, and how." *Id*. at 1328.  With respect to intent, the court held that while knowledge and intent may be averred generally, the *pleadings* must allege "sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Id*.

**2.      The Complaint fails to allege sufficient facts to meet the heightened pleading requirement of Rule 9(b)**

In the present case, Plaintiff's Complaint fails to plead any facts to support the required element that any alleged false marking was done with "the purpose of deceiving the public." Instead, Plaintiff does no more than conclusorily allege that the claimed false marking was done with such intent.  (Compl. ¶ 24) ("Upon information and belief, the Defendant, and/or the Defendant's agents, have marked, and continue to mark, certain products with the expired 356 Patent in order to deceive the public and gain a competitive advantage in the market"); (*see also* Compl. ¶¶ 6, 24, 47, and 48.)  The Federal Circuit has noted that this type of conclusory pleading of the intent element does not pass muster under Rule 9(b).  "[W]e must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations . . . ." *Exergen*, 575 F.3d at *1328 n.4 (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)).  "[W]here allegations of fraud are explicitly or . . . implicitly . . . based only on information and belief, the complaint must set forth the source of the information and the reasons for the belief." *Exergen*, 575 F.3d at *1331 n.7 (quoting *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 878 (1st Cir.

---

[12]   *See also Cent. Admixture Pharmacy Services, Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356-1357 (Fed. Cir. 2007); *Ferguson Beauregard/Logic Controls, Inc. v. Mega Sys.*, 350 F.3d 1327, 1344 (Fed. Cir. 2003) ("inequitable conduct, while a broader concept than fraud, must be pled with particularity").

1991)).  Plaintiff alleges no facts in support of its allegation that "false marking was done with the intent to deceive."  *See, e.g., King Auto., Inc. v. Speedy Muffler King, Inc.*, 667 F.2d 1008, 1010 (Cust. & Pat. App. 1981) (rejecting attempts to draw inferences regarding knowledge and intent based on pleadings, ". . . Rule 9(b) requires that the pleadings contain explicit rather than implied expression of the circumstances constituting fraud.").[13]  There is also no support for any inference that P&G acted for the purpose of deceiving the public.[14]  Moreover, several district courts have expressly rejected false marking plaintiffs' attempts to plead "sophisticated company" as a substitute for "intent to deceive."  *See*, *e.g.*, *Brinkmeier v. BIC*, No. 10-00001 (D. Del. Aug. 25, 2010) (holding allegations that defendant is sophisticated and employs experienced counsel do not adequately allege intent to deceive under Rule 9(b)).  Consequently, Plaintiff's Complaint fails under Rule 9(b).

### 3. The Complaint fails to allege sufficient facts to meet the of basic pleading requirement of Rule 8(a)

Even under the more lenient pleading standard of Rule 8(a)(2), it is insufficient for a complaint to make "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Hershey v. Energy Transfer Partners, L.P.*, No. 09-20651, 2010 WL 2510122, at *9 (5th Cir. June 23, 2010) (granting Rule 12(b)(6) motion to dismiss).  In the present case, however, Plaintiff simply makes

---

[13]  Although *King Auto.* involved trademark fraud, it was quoted in the Federal Circuit's *Exergen* opinion discussed above.  *Exergen Corp. v. Wal-Mart Stores Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009).

[14]  Moreover, Plaintiff could not have plead intent on information and belief, rather than on actual knowledge.  "Pleading on information and belief is permitted under Rule 9(b) when essential information lies uniquely within another party's control, *but only if the pleading sets forth specific facts upon which the belief is reasonably based*."  *Exergen*, 575 F.3d at 1330 (emphasis added).  "Allegations of fraud based on information and belief do not satisfy the particularity requirement unless accompanied by a statement of the specific facts on which the belief is founded."  *City of Santa Clara v. Astra United States, Inc.*, 428 F. Supp. 2d 1029, 1036 (N.D. Cal. 2006).

no factual allegations that would support its conclusory assertion that P&G acted "with the intent to deceive the public." No facts are provided that are any more consistent with an intent to deceive than with no intent to deceive. In sum, the Complaint fails to sufficiently allege that any false marking was done for the purpose of deceiving the public, and it therefore fails to state a claim under Rule 12(b)(6).

### C. Section 292 violates the "Take Care" clause of Article II because it gives a private party the powers of the Executive Branch without sufficient control by the Executive Branch

The Framers of the Constitution created a government characterized by the separation of powers. Each branch of government was given its own locus of control. As part of this separation of powers, Article II § 3 provides that the President "shall take Care that the Laws be faithfully executed." This duty to enforce federal laws has been termed the most "fundamental" power of the Executive Branch. *Meyers v. United States*, 272 U.S. 52, 117 (1926). It includes the authority to investigate and litigate offenses against the United States. *Buckley v. Valeo*, 424 U.S. 1, 124 (1976).

When one branch interferes with powers granted by the Constitution to a separate branch, the doctrine of separation of powers is violated. *Clinton v. Jones*, 520 U.S. 681, 701 (1997). The Supreme Court has described three ways Congress can encroach on the Executive or Judicial Branches: (1) by removing a constitutionally-granted power from another branch; (2) by involving itself in the appointment or removal of officers performing Executive functions; or (3) *by vesting another branch's powers in individuals who, although not controlled by Congress, are not part of the branch authorized by the Constitution to exercise those powers. See Clinton*, 520 U.S. at 701 (emphasis added); *N. Pipeline Constr. Co. v. Marathon Pipeline Constr. Co.*, 458 U.S. 50, 87 (1982); *Buckley*, 424 U.S. at 1. It is by this third method that Congress has impermissibly encroached upon the Executive Branch's duty to take care that the laws be faithfully executed in Section 292. By assigning the United State's interests to private citizens, Congress has vested Executive Branch powers in an individual citizen without providing the

Executive sufficient control over these suits brought under Section 292 to ensure that the laws are faithfully executed.

Section 292 does not give the Executive Branch "sufficient control" over a private citizen's suit brought on behalf of the United State's interests and, therefore, violates the Take Care clause of the U.S. Constitution.  In determining whether Congress has violated the separation of powers doctrine, a court must focus on the extent to which Congress has prevented another branch of government from accomplishing its constitutionally assigned functions (here, the Executive Branch's duty to take care that the laws be faithfully executed).  *United States v. Nixon*, 418 U.S. 683, 711-12 (1974).  More specifically, to determine whether the Take Care Clause of Article II has been violated by a statute, the pertinent question is whether the statute gives the Executive Branch "sufficient control" over the statute's enforcement "to ensure that the President is able to perform his constitutionally assigned duties" regardless of whether the statute provides for a civil or criminal right of action.  *Morrison v. Olsen*, 487 U.S. 654, 696 (1988) (analyzing statute's safeguards for "sufficient control"); *see also Printz v. United States*, 521 U.S. 898, 922 (1997) (striking provisions of the Brady Act that "effectively transfers this responsibility [to take care that the laws be faithfully executed] to thousands of [state officers] without meaningful Presidential control"); *United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787 (10th Cir. 2002) (analyzing FCA's safeguards for "sufficient control"); *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 753 (5th Cir. 2001) (analyzing FCA's safeguards for "sufficient control"); *United States ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.*, 41 F.3d 1032, 1041 (6th Cir. 1994) (analyzing FCA's safeguards for "sufficient control"); *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 758 (1993) (analyzing FCA's safeguards for "sufficient control").

Although the Supreme Court has explained that Article II determinations require application of this "sufficient control" test, the Court has not faced the issue of whether statutes permitting actions by private citizens, where the only alleged harm is to the United States, are valid under Article II.  Several Justices, however, have flagged that there is a potential Article II

violation for statutes that allow a citizen to sue without an injury-in-fact.  In *Vermont Agency*, for example, the Supreme Court emphasized that it "expressed no view on the question whether *qui tam* suits violate Article II, in particular the Appointments Clause of Section 2 and the Take Care Clause of Section 3."  529 U.S. 765, 778 n.8 (2000).  In *Friends of the Earth*, 528 U.S. at 197, Justice Kennedy's concurrence began with the statement that "Difficult and fundamental questions are raised when we ask whether exactions of public fines by private litigants, and the delegation of Executive power which might be inferable from the authorization, are permissible in view of the responsibilities committed to the Executive by Article II of the Constitution of the United States."  In *Lujan*, 504 U.S. at 577, Justice Scalia explained that the Article III standing requirement was important to prevent Article II violations, and in *Federal Election Comm'n v. Akins*, 524 U.S. 11, 36-37 (1998), he argued in his dissent that the Federal Election Campaign Act violated Article II because it allowed individuals without an injury-in-fact to sue.

Several lower courts have addressed whether the *qui tam* provisions of the False Claims Act violate Article II.  The False Claims Act has been held to pass Article II muster, but only because of the multiple safeguards in the statute that permit the U.S. to control the litigation.  Thus, because the Executive Branch must retain sufficient control over a *qui tam* relator's suit, it comports with the Take Care clause.

The safeguards of the False Claims Act that courts have deemed vital to its validity under Article II are: (1) an FCA action must be brought "in the name of the Government," with notice of the complaint and supporting evidence served on the U.S. *before* the relator is permitted to serve the complaint on the defendant; (2) the U.S. has the power to intervene in any FCA action and control its prosecution; (3) the U.S. can seek to limit the relator's participation; (4) the U.S. can seek dismissal of a relator's suit "notwithstanding the objections of the [relator]", while the realtor cannot dismiss the action without the Attorney General's written consent; (5) the U.S. can seek to stay the relator's discovery; (6) the U.S. can seek alternative remedies, "notwithstanding the objections of the [relator]"; and (7) the U.S. retains the right to be served with all papers, to limit discovery, and to limit recovery even if it chooses *not* to intervene. 31 U.S.C. §§ 3729-

3733; *United States ex rel. Stone v. Rockwell Int'l Corp.*, 265 F.3d 1157, 1175-76 (10th Cir. 2001); *Riley*, 252 F.3d 749 ("[a]ny intrusion by the [FCA] *qui tam* relator in the Executive's Article II power is comparatively modest, especially given the control mechanisms inherent in the FCA to mitigate such an intrusion"); *Taxpayers Against Fraud*, 41 F.3d at 1041; *Kelly*, 9 F.3d at 743 ("the FCA gives the Attorney General sufficient means of controlling or supervising relators to satisfy separation of powers concerns").

These safeguards (or any safeguards) are *entirely* lacking from Section 292.[15] Section 292 provides no opportunity for U.S. oversight or control whatsoever. The Supreme Court has held that Article II requires that the Executive Branch be given "sufficient control" over Executive Branch powers exercised by another. *Nixon*, 418 U.S. at 711-112. The application of this standard to Section 292 is made easy by the complete absence of *any* control retained in the Executive Branch over a private citizen's suit under Section 292. The Executive Branch is thus effectively precluded from its duty to "Take care" that the laws be faithfully executed.

The lack of control is not merely a theoretical problem for the Executive Branch. Where a plaintiff sues as the partial assignee of the government's injury, any resulting judgment is binding on the United States. *Stauffer*, 2009-1428, slip op. at *15-16 ("the government would not be able to recover a fine from Brooks Brothers if Stauffer loses, as *res judicata* would attach to claims against Brooks Brothers for the particular markings at issue.") (citations omitted). This is true regardless of the skill or diligence of the plaintiff – there is no statutory mechanism under Section 292 to ensure that the public interest is actually being served, and nothing to stop a plaintiff from undercutting the public interest for his own via settlement or otherwise (in contrast to the FCA, which gives the U.S. the right to control the litigation). If a plaintiff sues pursuant to Section 292 based on the government's injury, and then settles for a tiny fraction of what could

---

[15]  It is interesting to note that the FCA provisions addressing actions by private individuals is several paragraphs long and contains explicit recitations of governmental controls, whereas the Section 292 provision addressing who may bring an action is only a single sentence long and includes no governmental controls.

be recovered (which plaintiff can do under Section 292 with no permission or agreement from the U.S. government), then the U.S. government is estopped from later bringing suit itself to recover the full amount of damages to which it (and the public) may be entitled. In short, the lack of safeguards in Section 292, in contrast to the many safeguards found in the FCA, show that a plaintiff with no personal injury-in-fact cannot proceed as a "partial assignee of the government's injury" without a violation of Article II.

In conclusion, Section 292 violates the Take Care clause of Article II because Congress took constitutionally-designated Executive powers away from the Executive Branch and gave them to private citizens, without giving the Executive Branch sufficient control over the citizens' suits.

## V.    CONCLUSION

For the foregoing reasons, P&G respectfully requests the Court to dismiss Plaintiff's Complaint.

Dated:  September 22, 2010                        Respectfully Submitted,

                                                 /s/ Jason C. White
                                                 Jason C. White
                                                 Scott Sherwin
                                                 HOWREY LLP
                                                 321 N. Clark Street, Suite 3400
                                                 Chicago, IL 60654
                                                 Tel:  312.595.1239
                                                 Fax:  312.595.2250
                                                 Email:  whitej@howrey.com
                                                 Email:  sherwins@howrey.com

**<u>CERTIFICATE OF SERVICE</u>**

I certify that a copy of the foregoing document was served via CM/ECF on September 22, 2010 upon all counsel of record.  In addition, I certify that a copy of the foregoing document was served via certified mail on September 22, 2010 upon the Attorney General of the United States.

/s/ Jason C. White_____