**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PAUL LUKA,<br><br>    Plaintiff,<br><br>    v.<br><br>THE PROCTER AND GAMBLE COMPANY, INNOVATIVE BRANDS, LLC, IDELLE LABS, LTD., and HELEN OF TROY, LTD.,<br><br>    Defendants. | Civil Action No. 1:10-cv-02511<br>Judge Kennelly<br>Magistrate Judge Cole<br><br>JURY TRIAL DEMANDED |

**DEFENDANT PROCTER AND GAMBLE COMPANY'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO
<u>DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>**

## I.     INTRODUCTION

Plaintiff Paul Luka's Amended Complaint alleges that The Procter and Gamble Company ("P&G") violated the false patent marking statute, 35 U.S.C. § 292, by not removing patent numbers from packaging on the Sure Max line of products after the expiration of certain patents. However, his Complaint has three fundamental flaws requiring dismissal:

First, P&G did not manufacture the Sure Max line of products.  P&G sold the Sure Max line of products to another company in 2006, years before the patents expired in 2008 and 2009. Further, P&G never designed the packaging or had any control over the advertizing or sale of the Sure Max line of products.  P&G did not commit any act of false marking, let alone intend to deceive the public; therefore, the Amended Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim against P&G.

Second, the Amended Complaint fails to comply with both the basic pleading requirements of Rule 8(a) and the heightened pleading requirements of Rule 9(b) because its conclusory allegations do not contain sufficient facts to provide the requisite notice of who, what, when, where, and how P&G allegedly marked its products with intent to deceive the public.  Instead, it impermissibly relies on allegations made "on information and belief."  Even if the allegations made on "information and belief" could be considered for purposes of satisfying Rule 9(b), Plaintiff's allegations are similar to allegations that other courts have rejected. Further, the United States – the real party in this case – recently filed an *amicus* brief with the Federal Circuit arguing that allegations very similar to those raised by Plaintiff are insufficient under Rule 9(b).[1]  For these reasons, the Amended Complaint should be dismissed with prejudice.

Third, on Constitutional grounds, the false marking statute allows any person – a *qui tam* relator – to sue on the United States' behalf without any "sufficient control" over the *qui tam* relator or the litigation as a whole.  This lack of control violates the "Take Care" clause of

---

[1]   Response of the United States as *Amicus Curiae* in Support of the Petitioner, *In re BP Lubricants USA Inc.*, No. 2010-960 (Fed. Cir. Oct. 20, 2010) (hereafter "*In re BP Lubricants* Amicus Brief"), is attached as Ex. 1.

Article II because Congress impermissibly stripped the Executive Branch of its power to enforce the laws. For this reason as well, the Amended Complaint should be dismissed.

## II. STATEMENT OF FACTS

### A. The Law of Patent Marking

In a patent infringement suit, the patent holder may collect damages only from the time an infringer has notice of the patentee's patent. 35 U.S.C. § 287. A patentee may give notice of its patent by marking the product with the applicable patent number. *Id*. By providing constructive notice of its patent by marking its product, the patentee may recover damages under that patent for all infringing activity within the six-year limitations period, regardless of the infringer's actual notice of the patent. *Id*. Patentees, therefore, have an incentive to mark their products with their patent numbers to ensure full recovery of damages caused by infringement.

The patent laws' encouragement of patent marking furthers the goal of active competition. A patent must disclose how to make and use the patented invention and set forth the best way to implement the invention. 35 U.S.C. § 112. Accordingly, by marking a patented product with the patent number, the patentee is advertising to the world where to find the instruction manual – the patent – for that product. Once a competitor obtains the patent, it can engage in encouraged activities such as designing around the patent, improving on the invention disclosed in the patent, or copying the patent after it has expired. This furthers the patent laws' foundational principle of *quid pro quo*, wherein a patentee obtains a limited right to exclude others from making her invention in exchange for disclosing that invention to the public.

As a counterpart to the patent marking provision, the false patent marking provision of the Patent Act, 35 U.S.C. § 292, prohibits: (1) marking a product with a patent number without the consent of the patentee; (2) marking an unpatented article with a patent number; or (3) marking an article with a false statement that a patent application is pending. In addition, there is no violation unless the patentee intended to deceive the public with its markings.

### B. Plaintiff's allegations against Defendants

Plaintiff is not a competitor of P&G. He does not sell products or otherwise compete with P&G. Plaintiff does not even allege that he is a consumer of the products at issue. He does not claim to have been directly harmed by the alleged false marking. Plaintiff does not allege that the patents do not cover the product. Instead, Plaintiff only asserts that the Sure Max product was falsely marked with two expired U.S. Patents: 5,000,356 and 5,156,834. Based on this allegation, Plaintiff seeks a monetary windfall under the theory that each product marked with an expired patent number could carry a fine of up to $500 payable to the first plaintiff to file suit. *See, e.g.*, *Forest Group Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1303 (Fed. Cir. 2009).

Plaintiff's allegations regarding P&G's alleged intent to deceive the public (a required element of false marking) are entirely conclusory:

> Upon information and belief, one or more of the Defendants caused the Sure Max product and packaging materials to be marked with the expired 356 Patent and 834 Patent numbers with the intent to deceive the public and to gain a competitive advantage in the market.

(Am. Compl. at ¶ 6); (*see also id.* at ¶¶ 33, 34, 74 and 76.)

Plaintiff cites no factual details to support its allegations, other than the allegation that P&G is a sophisticated company. (Am. Compl. at ¶¶ 45-48). These allegations, even if taken as true, do not lead to Plaintiff's desired conclusion of strict liability for false marking. Furthermore, nearly all of the allegations in the Amended Complaint are made "on information and belief." *See, e.g.*, *id*. However, it is improper to make an allegation of fraud "on information and belief," unless additional pleading requirements are included. The Amended Complaint has not included those additional allegations.

### III. ARGUMENT

### A. P&G has not committed any act of false marking because it sold the Sure Max line of products to another company several years ago

P&G has not marked or sold any Sure Max product after the patents expired; therefore, P&G did not commit any act of false marking, and this Amended Complaint should be

3

dismissed. In 2006, P&G sold the Sure brand and provided a license to the 5,000,356 and 5,156,834 patents to a third party, Innovative Brands, LLC. (Hogan Charles Decl. at ¶ 2) (attached). These patents expired several years after the sale to Innovative in 2008 and 2009, respectively. After the expiration of these patents, P&G did not manufacture any Sure Max product, design the Sure Max packaging, or mark any Sure Max product with an expired patent number. (*Id*. at ¶ 4). Further, after the expiration of the patents, P&G did not have any control over the marketing and advertizing of the Sure Max line of products, or sell any Sure Max products. (*Id*. at ¶ 3). Therefore, for each of these reasons, P&G did not commit any act that could be alleged to be false marking, and it certainly did not act with any intent to deceive the public. *See* 35 U.S.C. § 292. P&G should be dismissed from this action under Fed. R. Civ. P. 12(b)(6) because the Amended Complaint fails to state a claim against P&G.

**B.** **The Amended Complaint should be dismissed because the allegations of intent to deceive the public do not satisfy the basic pleading requirements of Rule 8(a)**

Section 292 does not impose strict liability.[2] It requires proof of intent to deceive the public, as made clear by the Federal Circuit in *Pequignot* and *Clontech*. *Pequignot v. Solo Cup Co.*, 608 F. 3d 1356, 1363 (Fed. Cir. June 10, 2010) ("Because the statute requires that the false marker act 'for the purpose of deceiving the public,' *a purpose of deceit, rather than simply knowledge that a statement is false, is required*.") (emphasis added); *see also Clontech Labs, Inc. v. Invitrogen Corp.*, 406 F.3d, 1347, 1352 (Fed. Cir. 2005).[3]

Under Rule 8(a), it is insufficient for a complaint to make "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Accordingly, to survive a motion to dismiss, a complaint must include more than mere conclusory allegations that the defendant acted with the specific intent to deceive

---

[2] *In re BP Lubricants* Amicus Brief at 16.

[3] The Federal Circuit has also addressed Rule 9(b)'s pleading requirements in the analogous context of inequitable conduct in patent cases. *Exergen Corp. v. Wal-Mart Stores Inc.*, 575 F.3d 1312 (Fed. Cir. 2009); *Ferguson Beauregard/Logic Controls, Inc. v. Mega Sys.*, 350 F.3d 1327, 1344 (Fed. Cir. 2003). These precedents are discussed below in Section II. B. 1.

the public by failing to remove expired patent numbers from the accused product. In the present case, Plaintiff has not met this burden.

The Amended Complaint presents no facts that support Plaintiff's conclusory allegation that P&G acted "with the intent to deceive the public." Instead, Plaintiff only offers unsupported allegations that the false marking was done with such purposeful intent. (*See, e.g.*, Am. Compl. at ¶ 54) ("Defendants knew or should have known that the 356 Patent is expired, and has been expired since October 11, 2008.") (*see also id*. at ¶¶ 49, 55, 67, 68, 70, and 71). This type of allegation has been rejected by the United States, the real party in this case, as a basis for stating a claim. *In re BP Lubricants* Amicus Brief at 17 ("[I]f an allegation that a defendant 'should have known' that a patent had expired was held to be sufficient, it would expand such actions to include mere negligence, where again Congress designed the statute only to create liability for intentional actions"). As a result, Plaintiff's allegations are no more consistent with an intent to deceive than with no intent to deceive. *Id*. ("After all, an expired patent is just as likely to be the result of inattention as an intent to deceive, and additional facts are necessary to distinguish whether the defendant acts were intentional or inadvertent"). Consequently, Plaintiff fails to state a claim under Rule 8(a). *See, e.g.*, *Brinkmeier v. Graco Children's Products Inc.*, 684 F. Supp. 2d 548, 549 (D. Del. 2010). For this reason, the Amended Complaint should be dismissed with prejudice under Rule 12(b)(6).

### C. The Amended Complaint should be dismissed because the allegations of intent to deceive the public do not satisfy the heightened pleading requirements of Rule 9(b)

#### 1. Allegations of false marking are subject to the heightened pleading requirements Rule 9(b)

While the Federal Circuit has not expressly held that Rule 9(b) applies to false patent marking claims, the court provided a strong indication that it does. In its recent *Stauffer v. Brooks Bros.* decision, the Federal Circuit remanded with these specific instructions:

> "We remand for the court to address the merits of the case, including [defendant's] motion to dismiss pursuant to Rule 12(b)(6) 'on the grounds that the complaint fails to state a plausible

5

>claim to relief because it fails to allege an 'intent to deceive' the public – a critical element of a section 292 claim – with sufficient specificity to meet the heightened pleading requirements for claims of fraud imposed by' Rule 9(b)."

*Stauffer v. Brooks Bros.*, No. 2009-1428, -1430, and -1453, 2010 U.S. App. LEXIS 18144, at *19 (Fed. Cir. Aug. 31, 2010) (quoting *Stauffer v. Brooks Bros.*, 615 F. Supp. 2d 248, 251 n.1. (S.D.N.Y. 2009)).[4]

Moreover, in a recent Federal Circuit *amicus* brief, the United States argued that Rule 9(b) applies to false marking complaints. *In re BP Lubricants* Amicus Brief at 2 ("The position of the United States is that, consistent with other cases 'sounding in fraud,' False Marking cases should be subject to the pleading requirements of Rule 9(b)"). The United States argued that *qui tam* plaintiffs must meet this standard at the pleading stage because:

>"[r]equiring a factual allegation supporting an intent to deceive, as opposed to and distinguishable from mere negligence, will support the integrity of the law and preserve the legislature's intentions by curtailing law suits lacking sufficient allegations of intentionality. Such an approach also supports the efficiency of the judicial system by curtailing lawsuits that are little more than 'fishing expeditions' by potential relators seeking expired patent markings as a basis for initiating a lawsuit without any evidence of an intent to deceive."

*Id*. at 18.

While the United States has not yet intervened in this case, its *In re BP Lubricants* analysis and conclusion further supports P&G's position that Plaintiff's allegations of intent to deceive the public do not meet the pleading standards required by Rule 9(b). Consequently, P&G respectfully urges this court to follow the strong signals from the Federal Circuit, the opinion of the United States, and numerous district courts that have addressed this issue and also hold that Rule 9(b) applies to an allegation of false marking.

---

[4] Before the development of the expired false marking cottage industry, the Federal Circuit also affirmed a decision that an allegation of false marking required the claimant to satisfy the heighted pleading requirement of Rule 9(b). *See Cent. Admixture Pharm. Servs., Inc. v. Advanced Cardiac Solutions, P.C.*, No. 00-2430, 2006 WL 4448613, at *24 (N.D. Ala. Jan. 13, 2006), *aff'd* in relevant part by 482 F.3d 1347 (Fed. Cir. 2007).

### 2. Courts have dismissed similar false marking complaints with conclusory allegations of intent

Courts have dismissed false marking complaints for failure to plead intent to deceive the public with specificity when the complaints included only conclusory allegations of intent – like those in the Amended Complaint.[5] In *Simonian v. Cisco Sys., Inc.*, No. 10-01306, at 9-10 (N.D. Ill. filed June 17, 2010), the court held that the complaint did not meet the heightened pleading requirements of Rule 9(b) because ". . . the mere fact of mismarking a product does not necessarily show knowledge or intent. Thus, [plaintiff] cannot proceed with his claim absent any specific factual allegations indicating that [defendant] had knowledge of the mismarking or an intent to deceive the public."[6] *See also Simonian v. Global Instruments*, No. 10-01293 (N.D. Ill. Aug. 26, 2010) (same).[7]

Arguments lacking specific factual allegations in a complaint were also rejected in *Inventorprise, Inc. v. Target Corp.*, No. 09-380, 2009 WL 3644076, at *6 (N.D.N.Y. Nov. 2, 2009) (case dismissed for failure to plead deceptive intent with sufficient particularity where allegations were similar to those pled here). *See also Max Impact, LLC v. Sherwood Group, Inc.*, No. 09-902, 2009 WL 2448108, at *1 (S.D.N.Y. Aug. 10, 2009) (refusing to permit plaintiff to add a claim for false marking based on the claim's futility, where there were only conclusory allegations to support an intent to deceive).

In *Brinkmeier v. Graco Children's Products Inc.*, 684 F. Supp. 2d 548, 554 (D. Del. Feb. 16, 2010), the complaint speculated that "Defendant cannot have any reasonable belief that such products are protected by such [expired] patents," and that defendant acted "for the purpose of deceiving the public." The court found that "these allegations are conclusory and do not contain enough factual matter to suggest that Defendant acted with requisite intent to deceive," and dismissed them. *Id.* (Granting the motion to dismiss with respect to most patents, but denying

---

[5] Your Honor has previously addressed, and denied, two motions to dismiss under Fed. R. Civ. P. 9(b) in the false marking context. Defendant respectfully asks this Court to reconsider this issue in view of the Federal Circuit's instructions on remand in *Stauffer* and the United States' opinion on this issue.

[6] A copy of *Simonian v. Cisco Sys., Inc.*, is attached as Ex. 2.

[7] A copy of *Simonian v. Global Instruments*, is attached as Ex. 3.

the motion to dismiss-in-part with respect to one patent because the complaint included sufficient factual details). The result was similar in *Hollander*, where the court found that a "defendant's knowledge of the limited duration of patents and the actual expiration of the patents do not create an inference that defendant knew that the patents at issue actually expired." *Hollander v. Etymotic Research, Inc.*, No. 10-526, 2010 WL 2813015, at *6 (E.D. Pa. July 14, 2010).[8, 9, 10]

### 3. The allegations of intent to deceive the public in this case do not satisfy the heightened pleading requirements of Rule 9(b)

The Federal Circuit has held that an allegation of intent to deceive must be accompanied by "sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Exergen*, 575 F. 3d at 327 (analyzing intent under Rule 9 in the inequitable conduct context). The standard is only satisfied if a pleading identifies the "specific who, what, when, where, and how" of the alleged intent to deceive. *Id*. at 1328. This pleading requirement was imposed by the Federal Circuit so that a district court would have enough information to determine the reasonableness of the inference of scienter. *See King Auto., Inc. v. Speedy Muffler King, Inc.*, 667 F.2d 1008, 1010 (Cust. & Pat. App. 1981) (rejecting attempts to draw inferences regarding knowledge and intent based on pleadings and holding that "Rule 9(b) requires that the pleadings contain explicit rather than implied expression of the circumstances constituting fraud.").

In this case, Plaintiff has not alleged any facts that would support a strong inference of fraud, let alone "specific facts." The Amended Complaint does not contain the necessary factual allegations of "who, what, when, where, and how" the Defendants allegedly intended to deceive the public. There is no allegation of who at P&G allegedly knew that the patents were expired.

---

[8] *Hollander v. Etymotic Research*, No. 10-526, 2010 WL 2813015, *7 (E.D. Pa. July 14, 2010) ("[d]efendant's knowledge of the limited duration of patents and the actual expiration of the patents do not create an inference that defendant knew that the patents at issue actually expired."). A copy of *Hollander v. Etymotic Research* is attached as Ex. 4.

[9] *See Adv. Cartridge Tech. v. Lexmark*, No. 10-486 (M.D. Fla. June 30, 2010) (complaint failed to meet Rule 9(b)). A copy of *Adv. Cartridge Tech. v. Lexmark*, is attached as Ex. 5.

[10] *See also Herengracht v. W.M. Wrigley Jr. Co.*, No. 10-21784, at *11 (S.D. Fla. September 16, 2010). A copy of *Herengracht v. W.M. Wrigley Jr. Co.*, is attached as Ex. 6.

8

There is no allegation of when this person allegedly found out about the patent expiration. Finally, there is no allegation of how that person allegedly used the knowledge of the patent expiration to deceive the public. Without these allegations, which must be factually supported, the Complaint cannot satisfy Rule 9(b). Therefore, there is no strong inference of fraud and the Amended Complaint should be dismissed.

### 4. Plaintiff's "sophisticated company" allegation does not pass muster under Rule 9(b)

The only factual allegations in the Amended Complaint rely on the "sophisticated company" argument that has been explicitly rejected by several district courts and by the real party in this case: the United States. Specifically, courts routinely reject a false marking plaintiff's attempt – like Plaintiff's attempt – to plead that a company's "sophistication" based on its alleged knowledge of patent laws, patent filings, patent attorneys, and litigation history equates to an intent to deceive the public. *See, e.g.*, *Graco*, 684 F. Supp. 2d at 554; *Inventorprise*, No. 09-380, 2009 WL 3644076, at *6.[11] In *Graco*, the court distinguished between an allegation of intent to deceive that was merely premised on the size and sophistication of the company and an allegation that was further supported by additional facts regarding an intent to deceive. *Graco*, 684 F. Supp. 2d at 553-54. Based on this distinction, the court found that when a plaintiff pleads additional facts to support the conclusion that a defendant knew about the expired patent, the complaint may survive a motion to dismiss based on Rule 9(b). *Id.* If the complaint, however, only alleges that the patentee should have known that its patents were expired because they are a sophisticated company, as Plaintiff has alleged in this case, then these allegations fall short because they "do not contain enough factual matter to suggest that Defendants acted with requisite intent to deceive." *Id.*

---

[11] Hollander, 2010 WL 2813015, at *6; *see also Brinkmeier v. BIC Corp.*, No. 10-00001 (D. Del. Aug. 25, 2010) (holding allegations that defendant is sophisticated and employs experienced counsel do not adequately allege intent to deceive under Rule 9(b)), attached as Ex. 7.

9

In addition to the several district courts that have rejected the "sophisticated company" argument, the United States has also addressed this issue in the *In re BP Lubricants* Amicus Brief, where the United States concluded that:

> "[b]are bones allegations that a defendant is a 'sophisticated company' which 'knows, or should know' that the patent at issue had expired, such as pled here, are insufficient to satisfy Rule 9(b)'s pleading standard, even under its relaxed standard for pleading intent. Such conclusory pleadings do not 'allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind.'"

*Id.* at 16 (citing *Exergen*, 575 F.3d at 1327.)

The United States further argued that allowing a compliant to survive Rule 9(b) based solely on an allegation that a company is sophisticated, rather than plead any facts to support an allegation that the company intended to deceive the public, would "effectively write the intent requirement out of the statute and, instead, impose something akin to strict liability where Congress did not choose to impose such liability." *In re BP Lubricants* Amicus Brief at 16.

In the present case, Plaintiff alleges that because P&G is a large company that is sophisticated in patent matters, someone at P&G must have had actual knowledge of the patent expiration date. (Am. Compl. at ¶¶ 45-48). Plaintiff then concludes that because someone at P&G must have had this actual knowledge, they must have also intended to deceive the public by failing to remove the patent markings from their labels. (*Id.* at ¶¶ 74 and 76). Rule 9(b) exists, however, to prevent exactly this type of speculative pleading. *Exergen*, 575 F.3d at 1328 (citing *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) ("But because 'we must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations[,]. . . plaintiffs must allege facts that give rise to a strong inference of fraudulent intent.'")) (citations omitted).

### 5. Plaintiff's allegations "on information and belief" are insufficient under Rule 9(b)

Putting aside Plaintiff's speculative allegations of intent to deceive, and Plaintiff's "sophisticated company" argument, the Amended Complaint should be dismissed because its

10

allegations of intent to deceive are based, almost entirely, on statements made "on information and belief." The Federal Circuit addressed this issue in *Exergen* and held that an allegation of intent to deceive (and the required who, what, when, where, and how) could not be based "on information and belief," unless those facts were uniquely in another party's control *and* the pleading provided the source of the information and the basis for believing that no other party could access that information. *Exergen*, 575 F.3d at *1330-31 n.7 (citations omitted); *id*. at *1330-31 n.7 ("where allegations of fraud are explicitly or . . . implicitly . . . based only on information and belief, the complaint must set forth the source of the information and the reasons for the belief") (citations omitted).[12] Here, Plaintiff has not alleged that necessary information lies exclusively in P&G's control or provided any specific facts upon which that belief could be based. Therefore, all of the allegations made "on information and belief" should be ignored and the Amended Complaint should be dismissed.

In summary, Rule 9(b) applies to an allegation of false marking. In this case, the Amended Complaint does not meet Rule 9(b) and should be dismissed because it fails to provide sufficient facts to support an allegation of intent to deceive, it relies on the rejected "sophisticated company" argument, and it only includes allegations made "on information and belief." As a result of these deficiencies, P&G respectfully submits that the Amended Complaint should be dismissed.

> D. Section 292 violates the "Take Care" clause of Article II because it gives a private party the powers of the Executive Branch without sufficient control by the Executive Branch

The Framers of the Constitution created a government characterized by the separation of powers. Each branch of government was given its own locus of control. As part of this separation of powers, Article II § 3 provides that the President "shall take Care that the Laws be

---

[12] Because allegations of fraud must include facts, not allegations "on information and belief" many *qui tam* actions are instituted by internal corporate whistle-blowers, not random members of the public. *See* The False Claims Act, 31 U.S.C. § 3729–3733. In that context, the government often cannot bring a suit because it does not have access to the information, thus it "hires" whistle-blowers to bring issues to their attention by sharing part of any recovery with them.

faithfully executed." This duty to enforce federal laws has been termed the most "fundamental" power of the Executive Branch. *Meyers v. United States*, 272 U.S. 52, 117 (1926). It includes the authority to investigate and litigate offenses against the United States. *Buckley v. Valeo*, 424 U.S. 1, 124 (1976).

When one branch interferes with powers granted by the Constitution to a separate branch, the doctrine of separation of powers is violated. *Clinton v. Jones*, 520 U.S. 681, 701 (1997). The Supreme Court has described three ways Congress can encroach on the Executive or Judicial Branches: (1) by removing a constitutionally-granted power from another branch; (2) by involving itself in the appointment or removal of officers performing Executive functions; or (3) *by vesting another branch's powers in individuals who, although not controlled by Congress, are not part of the branch authorized by the Constitution to exercise those powers. See Clinton*, 520 U.S. at 701 (emphasis added); *N. Pipeline Constr. Co. v. Marathon Pipeline Constr. Co.*, 458 U.S. 50, 87 (1982); *Buckley*, 424 U.S. at 1. It is by this third method that Congress has impermissibly encroached upon the Executive Branch's duty to take care that the laws be faithfully executed in Section 292. By assigning the United State's interests to private citizens, Congress has vested Executive Branch powers in an individual citizen without providing the Executive sufficient control over these suits brought under Section 292 to ensure that the laws are faithfully executed.

Section 292 does not give the Executive Branch "sufficient control" over a private citizen's suit brought on behalf of the United States' interests and, therefore, violates the Take Care clause of the U.S. Constitution. In determining whether Congress has violated the separation of powers doctrine, a court must focus on the extent to which Congress has prevented another branch of government from accomplishing its constitutionally assigned functions (here, the Executive Branch's duty to take care that the laws be faithfully executed). *United States v. Nixon*, 418 U.S. 683, 711-12 (1974). More specifically, to determine whether the Take Care Clause of Article II has been violated by a statute, the pertinent question is whether the statute gives the Executive Branch "sufficient control" over the statute's enforcement "to ensure that the

12

President is able to perform his constitutionally assigned duties" regardless of whether the statute provides for a civil or criminal right of action. *Morrison v. Olsen*, 487 U.S. 654, 696 (1988); *see also Printz v. United States*, 521 U.S. 898, 922 (1997); *United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787 (10th Cir. 2002); *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 753 (5th Cir. 2001); *United States ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.*, 41 F.3d 1032, 1041 (6th Cir. 1994); *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 758 (1993).

      Although the Supreme Court has explained that Article II determinations require application of this "sufficient control" test, the Court has not faced the issue of whether statutes permitting actions by private citizens, where the only alleged harm is to the United States, are valid under Article II. Several Justices, however, have flagged that there is a potential Article II violation for statutes that allow a citizen to sue without an injury-in-fact. In *Vermont Agency*, for example, the Supreme Court emphasized that it "expressed no view on the question whether *qui tam* suits violate Article II, in particular the Appointments Clause of Section 2 and the Take Care Clause of Section 3." *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 778 n.8 (2000). In *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 197 (2000), Justice Kennedy's concurrence began with the statement that "Difficult and fundamental questions are raised when we ask whether exactions of public fines by private litigants, and the delegation of Executive power which might be inferable from the authorization, are permissible in view of the responsibilities committed to the Executive by Article II of the Constitution of the United States." In *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 577 (1992), Justice Scalia explained that the Article III standing requirement was important to prevent Article II violations, and in *Federal Election Comm'n v. Akins*, 524 U.S. 11, 36-37 (1998), he argued in his dissent that the Federal Election Campaign Act violated Article II because it allowed individuals without an injury-in-fact to sue.

      Several lower courts have addressed whether the *qui tam* provisions of the False Claims Act violate Article II. The False Claims Act has been held to pass Article II muster, but only because of the multiple safeguards in the statute that permit the U.S. to control the litigation.

13

Thus, because the Executive Branch must retain sufficient control over a *qui tam* relator's suit, it comports with the Take Care clause.

The safeguards of the False Claims Act that courts have deemed vital to its validity under Article II are: (1) an FCA action must be brought "in the name of the Government," with notice of the complaint and supporting evidence served on the U.S. *before* the relator is permitted to serve the complaint on the defendant; (2) the U.S. has the power to intervene in any FCA action and control its prosecution; (3) the U.S. can seek to limit the relator's participation; (4) the U.S. can seek dismissal of a relator's suit "notwithstanding the objections of the [relator]", while the realtor cannot dismiss the action without the Attorney General's written consent; (5) the U.S. can seek to stay the relator's discovery; (6) the U.S. can seek alternative remedies, "notwithstanding the objections of the [relator]"; and (7) the U.S. retains the right to be served with all papers, to limit discovery, and to limit recovery even if it chooses *not* to intervene. 31 U.S.C. §§ 3729-3733; *United States ex rel. Stone v. Rockwell Int'l Corp.*, 265 F.3d 1157, 1175-76 (10th Cir. 2001); *Riley*, 252 F.3d at 757 ("[a]ny intrusion by the [FCA] *qui tam* relator in the Executive's Article II power is comparatively modest, especially given the control mechanisms inherent in the FCA to mitigate such an intrusion"); *Taxpayers Against Fraud*, 41 F.3d at 1041; *Kelly*, 9 F.3d at 743 ("the FCA gives the Attorney General sufficient means of controlling or supervising relators to satisfy separation of powers concerns").

These safeguards (or any safeguards) are *entirely* lacking from Section 292.[13]  Section 292 provides no opportunity for U.S. oversight or control whatsoever.  The Supreme Court has held that Article II requires that the Executive Branch be given "sufficient control" over Executive Branch powers exercised by another.  *Nixon*, 418 U.S. at 711-112.  The application of this standard to Section 292 is made easy by the complete absence of *any* control retained in the

---

[13] It is interesting to note that the FCA provisions addressing actions by private individuals is several paragraphs long and contains explicit recitations of governmental controls, whereas the Section 292 provision addressing who may bring an action is only a single sentence long and includes no governmental controls.

14

Executive Branch over a private citizen's suit under Section 292. The Executive Branch is thus effectively precluded from its duty to "Take Care" that the laws be faithfully executed.

The lack of control is not merely a theoretical problem for the Executive Branch. Where a plaintiff sues as the partial assignee of the government's injury, any resulting judgment is binding on the United States. *Stauffer*, 2010 U.S. App. LEXIS, at *21 ("the government would not be able to recover a fine from Brooks Brothers if Stauffer loses, as *res judicata* would attach to claims against Brooks Brothers for the particular markings at issue") (citations omitted). This is true regardless of the skill or diligence of the plaintiff – there is no statutory mechanism under Section 292 to ensure that the public interest is actually being served, and nothing to stop a plaintiff from undercutting the public interest for his own via settlement or otherwise (in contrast to the FCA, which gives the U.S. the right to control the litigation). If a plaintiff sues pursuant to Section 292 based on the government's injury, and then settles for a tiny fraction of what could be recovered (which plaintiff can do under Section 292 with no permission or agreement from the U.S. government), then the U.S. government is estopped from later bringing suit itself to recover the full amount of damages to which it (and the public) may be entitled. In short, the lack of safeguards in Section 292, in contrast to the many safeguards found in the FCA, show that a plaintiff with no personal injury-in-fact cannot proceed as a "partial assignee of the government's injury" without a violation of Article II.

## IV.   CONCLUSION

Plaintiff's Amended Complaint must be dismissed because P&G sold the Sure Max brand to another company before the patents expired and did not have any control over patent markings on the Sure Max products after expiration of the patents. Further, the Amended Complaint fails to comply with the pleading requirements of Rules 8(a) and 9(b). Finally, 35 U.S.C. § 292 violates the "Take Care" clause of Article II of the U.S. Constitution because the Executive Branch does not have any control over *qui tam* plaintiffs. For these reasons, P&G respectfully requests that the Court dismiss Plaintiff's Second Amended Complaint with prejudice.

Dated: November 5, 2010 Respectfully Submitted

/s/ Jason C. White
Jason C. White
Thomas Williams
Scott Sherwin
HOWREY LLP
321 N. Clark Street, Suite 3400
Chicago, IL 60654
Tel.: 312.595.1239
Fax: 312.595.2250
E-mail: whitej@howrey.com
E-mail: williamst@howrey.com
E-mail: sherwins@howrey.com

*Attorneys for Defendant The Procter and Gamble Company*

16

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing document was served via CM/ECF on November 5, 2010 upon all counsel of record.

/s/ Jason C. White